## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

|  |  |
|---|---|
| NATHAN E. CARROLL, *et al.*, | |
|       Plaintiffs, | |
|       v. | Case No. 2:21-cv-115 |
| NORTHAMPTON RESTAURANTS, INC., | |
|       Defendant. | |

### <u>MEMORANDUM OPINION & ORDER</u>

Before the Court are the parties' Joint Motion to Approve FLSA Settlement (ECF Nos. 137 (motion), 138 (memorandum)) and the plaintiffs' Motion for Attorneys' Fees (ECF Nos. 140 (motion),[1] 141 (memorandum)). For the reasons stated herein, the motion to approve settlement is **GRANTED**, and the motion for attorneys' fees is **GRANTED WITH MODIFICATIONS.**

## I.    BACKGROUND[2]

This is a collective action for unpaid wages pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201. The plaintiffs are former restaurant servers at Aberdeen Barn Steakhouse ("ABS"). ECF No. 10 ¶¶ 1–3. ABS is a family-owned restaurant in Virginia Beach, Virgina. *Id.* ¶ 4. The plaintiffs brought this

---

[1] Named Plaintiffs Nathan E. Carroll and Geraldine P. Corrigan filed this motion "on behalf of themselves and all others similarly situated." ECF No. 140 at 1.

[2] The facts, as outlined here, are taken from the Amended Complaint (ECF No. 10). However, the Court's recitation of the allegations should not be construed as admissions by Defendant Northampton Restaurants, Inc.

action, on behalf of themselves and others similarly situated, against Defendant Northampton Restaurant, Inc, ("NRI"), which does business as ABS, and Defendant Kostas Pramatia—NRI's president. *Id.* at 3–5.

In August 2020, Plaintiffs Carroll and Corrigan began working as restaurant servers at ABS. ECF No. 10 ¶ 12. Because they were paid $2.13 per hour, they relied on customer tips for the "remaining portion of their pay." *Id.* ¶¶ 14–15. According to the plaintiffs, servers were "required to pay" a percentage of their tips to the defendants. *Id.* ¶¶ 21–27. Servers' pay was further reduced for customer walk-outs and credit card processing fees. *Id.* ¶¶ 18, 21. The defendants failed to redistribute tips through a tip pool system. *Id.* ¶ 20. Plaintiff Carroll alleges that he "complained to a fellow server" about the defendants' wage policies. *Id.* ¶ 65. The following day, Plaintiff Carroll was terminated. *Id.* ¶ 69. The defendants did not provide a basis for Plaintiff Carroll's termination. *Id.*

As a result, the plaintiffs filed this collective action on March 1, 2021. ECF No. 1. The plaintiffs brought three unpaid wages claims against the defendants: one claim under the FLSA (29 U.S.C. § 206(a)) and two claims under the Virginia Wage Payment Act (Va. Code § 40.1-29). ECF No. 10 ¶¶ 49–63. Plaintiff Carroll brought a FLSA claim for retaliation pursuant to 29 U.S.C. § 215(a)(3). *Id.* ¶¶ 64–72. The plaintiffs requested unpaid wages, pre- and post-judgment interest, liquidated damages, and attorneys' fees. *Id.* ¶ 1. Plaintiff Carroll specifically requested $3,000

in unpaid wages and $21,000 in lost wages.[3] *Id*. at 16. And Plaintiff Corrigan sought $3,000 in unpaid wages. *Id*.

On September 26, 2022, the Honorable Arenda L. Wright Allen, to whom this case was previously assigned, conditionally certified the class of plaintiffs in part. ECF No. 55 at 16. The class was defined as "all persons who currently work or formerly worked at" ABS as "waiters or waitresses from September 2018 through June 2021." *Id*. at 14. On October 17, 2023, the plaintiffs voluntarily dismissed Defendant Pramatia and all claims under Virginia law. ECF No. 121 (Stipulation). Plaintiff Carroll also dismissed his retaliation claim. *Id*. The only claim that remained was the plaintiffs' FLSA claim for unpaid wages. *Id*.

On November 6, 2023, the parties informed this Court that they had reached a settlement. ECF No. 136. Thereafter, the parties submitted a joint motion for settlement approval. ECF Nos. 137, 138. The defendant agreed to provide a settlement fund of $160,000 for the class of plaintiffs and an incentive award of $9,000 for Plaintiff Carroll. ECF No. 137-1 at 3–4. The Court preliminarily approved the parties' settlement and directed the plaintiffs to file a motion for attorneys' fees and costs. ECF No. 139 at 2–3.

The plaintiffs filed that motion on January 11, 2024. ECF No. 140.  In it, plaintiffs' counsel seeks $367,406.25 in fees and $10,993.37 in costs. *Id*. NRI opposes the request and avers that the fee award should be reduced to $145,301.10. ECF No. 142 at 1, 10.

---

[3] Plaintiff Carroll individually sought lost wages pursuant to his retaliation claim. ECF No. 10 at 16.

3

## II.    LEGAL STANDARDS

### A.    FLSA Settlement Approval

When parties seek to settle FLSA claims for back pay, the district court must review the proposed settlement and determine if it is a "fair and reasonable resolution of a bona fide dispute." *Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Lab., Emp. Standards Admin., Wage & Hour Div.*, 679 F.2d 1350, 1353 (11th Cir. 1982); *Gholston v. Smithfield Foods, Inc.*, No. 2:21-cv-194, 2022 WL 21842305, at *2; *Minsterman v. S.L. Nusbaum Realty Co.*, No. 2:10-cv-303, 2011 WL 9687, at *1 (E.D. Va. Jan. 21, 2011). "In deciding whether a bona fide dispute exists as to a defendant's liability under the FLSA, courts examine the pleadings in the case." *Duprey v. Scotts Co.*, 30 F. Supp. 3d 404, 408 (D. Md. 2014) (citing *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 1:08-cv-1310, 2009 WL 3094955, at *16–17 (E.D. Va. Sept. 28, 2009)).

"There is a strong presumption in favor of finding a settlement fair." *Lomascolo* 2009 WL 3094955, at *10 (quotation marks and citation omitted). When determining whether a FLSA settlement is fair and reasonable, district courts generally consider: (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the probability of plaintiffs' success on the merits, and (6) the amount of the settlement in relation to the potential recovery. *Lomascolo*, 2009 WL 3094955, at *10 (citing *Flinn v. FMC Corp.*, 528 F.2d 1169, 1171–74 (4th Cir. 1975) and *In re A.H. Robins Co., Inc. v. Aetna Cas. and Sur. Co.* 88 B.R. 755, 759 (E.D.

Va. 1988)); *Lafleur v. Dollar Tree Stores, Inc.*, 189 F. Supp. 3d 588, 593 (E.D. Va. 2016); *Patel v. Barot*, 15 F. Supp. 3d 648, 656 (E.D. Va. 2014).

### B.    Attorneys' Fees

Under the FLSA, a district court may award the plaintiffs "a reasonable attorney's fee." 29 U.S.C. § 216(b). "The fee applicant bears the burden of . . . documenting the appropriate hours expended and hourly rates. The applicant . . . should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

The Fourth Circuit has outlined a three-step approach for courts to take when determining the appropriate award for attorneys' fees. *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013). First, the court should "determine the lodestar figure by multiplying the number of reasonable hours" by "a reasonable" hourly fee. *Id.* (*citing Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009)). In order to determine whether any portion of a fee is reasonable, the following twelve factors should be considered:

(1)    the time and labor expended;

(2)    the novelty and difficulty of the questions raised;

(3)    the skill required to properly perform the legal services rendered;

(4)    the attorney's opportunity costs in pressing the instant litigation;

(5)    the customary fee for like work;

(6)    the attorney's expectations at the outset of the litigation;

(7)     the time limitations imposed by the client or circumstances;

(8)     the amount in controversy and the results obtained;

(9)     the experience, reputation and ability of the attorney;

(10)    the undesirability of the case within the legal community in which the suit arose;

(11)    the nature and length of the professional relationship between attorney and client; and

(12)    attorneys' fees awards in similar cases.

*In re Abrams & Abrams, P.A.*, 605 F.3d 238, 246 (4th Cir. 2010) ("*Johnson* factors").

Second, the court "must subtract fees for hours spent on unsuccessful claims unrelated to the successful ones." *McAfee*, 738 F.3d at 88 (citing *Robinson*, 560 F.3d at 243) (quotation marks omitted).

And third, the "court should award some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *McAfee*, 738 F. 3d at 88. When "a plaintiff has achieved only partial or limited success," the lodestar "may be an excessive amount," even "where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." *Hensley*, 461 U.S. at 436. The district court can "attempt to identify specific hours that should be eliminated, or it may simply reduce the plaintiffs' award based on limited success." *Id*. at 436–37. The court has "discretion in making this equitable judgment." *Id*. at 437.

### C.    Costs

The FLSA also permits parties to recover costs. 29 U.S.C. § 216(b). The district court has "considerable discretion" when deciding whether to award costs. *Constantino v. S/T Achilles*, 580 F.2d 121, 123 (4th Cir. 1978). Per the local rules of this district, when a party seeks to recover costs, they must "distinctly set forth each item thereof so that the nature of the charge can be readily understood." E.D. Va. Civ. R. 54(D)(1); *see* Fed. R. Civ. P. 54(D) ("By local rule, the court may establish special procedures by which to resolve fee issues."). They must also attach itemized documentation of each charge. ED. Va. Civ. R. 54(D)(1).

## III.    ANALYSIS

### A.    Approval of the FLSA Collective Action Settlement

#### i.    *Bona fide dispute*

The Court must first determine if a bona fide dispute over FLSA provisions exists. *Minsterman*, 2011 WL 9687817, at *1 (quoting *Lynn's Food Stores, Inc.,* 679 F.2d at 1353). Such a dispute exists when an employee claims they are entitled to unpaid wages under the FLSA.

In this case, the parties disputed whether the plaintiffs are entitled to damages under the FLSA. ECF No. 10 ¶ 26 (alleging that the defendants violated 29 U.S.C. § 203(m)(2)(B) when they failed to redistribute employee tips through a pool); ECF No. 106 at 21 (arguing that the plaintiffs are not entitled to a portion of damages, because an employer is not liable for tips withheld pursuant to a tip pool under the FLSA, 29 U.S.C. § 203(m)(2)(A)). They also contested the amount of unpaid wages and liquidated damages that the plaintiffs were entitled to. ECF No. 137 at 6

(agreeing that there was a bona fide dispute over the amount of damages). Title 29, United States Code, Section 216 governs the penalties for violating the FLSA, including the payment of unpaid wages and liquidated damages in equal amounts. The parties' settlement agreement provides a settlement fund for plaintiffs to receive compensation for both their unpaid wages and liquidated damages claims in equal amounts. ECF No. 137-1 ¶ 3. Therefore, this settlement resolves a bona fide dispute over FLSA provisions.

### ii.   *Reasonableness and fairness*

#### a.   *The extent of discovery*

First, the Court considers whether the parties had adequate time to conduct sufficient discovery. Here, the parties engaged in extensive discovery for "approximately two years." ECF No. 138 at 3. They retained experts, conducted "roughly" 12 depositions, exchanged interrogatories, requests for production, subpoenas, and tip policy logs—which provided servers' daily sales, and tips that the servers "w[ere] required to pay to the restaurant." ECF Nos. 113; 97-3; 138 at 3; 110 ¶ 22; 110-6; 110-7; 110-8; 110-9; 110-10; 110-12; 110-14. The plaintiffs had ample time to collect and review all the information they obtained in discovery. The parties represent that they had completed "all discovery" when they reached an agreement. ECF No. 138 at 3. Indeed, this information proved useful because it provided a basis for calculating damages and reaching a reasonable settlement. Thus, this factor weighs in favor of approving the settlement.

b. *The stage of proceedings*

Second, the Court looks to the stage of the proceedings, including the complexity, expense, and likely duration of the litigation. This factor generally weighs in favor of approving the proposed settlement, because discovery was complete before the parties reached an agreement. ECF No. 138; *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 254 (E.D. Va. 2009). Additionally, the parties filed their notice of settlement less than a month before trial was scheduled to begin. ECF No. 119.

There were also several motions pending, including motions for summary judgment (ECF Nos. 105, 109) and a motion to decertify the class (ECF No. 107). These motions addressed weighty, complex questions, including whether the defendant paid the plaintiffs a minimum wage, whether the plaintiffs had standing, if the plaintiffs were similarly situated, and whether the matter should proceed "as a collective action" at all. ECF Nos. 122 at 7; 108 at 2–3, 8. These "complex[]" questions would not resolve quickly if the parties chose to proceed. *Lomascolo*, 2009 WL 3094955, at *10. Given the volume of complex issues, the fact that discovery was already complete at the time of settlement, and that the trial was scheduled to begin in less than a month, the Court finds that the stage of proceedings weighs in favor of settlement approval.

c. *Absence of fraud or collusion*

Third, the Court considers the absence of fraud or collusion in the settlement. The parties represent that this settlement was achieved through good-faith, arms-length negotiations with "no possibility of fraud or collusion." ECF No. 138 at 7. Looking beyond the parties' own representations, the Court finds no evidence of fraud

or collusion in the record. *Lomascolo*, 2009 WL 3094955, at *12 ("There is a presumption that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary.") (citation omitted). It is clear that both parties defended this action vigorously. Accordingly, the Court finds that the absence of fraud or collusion further weighs in favor of settlement approval.

### d.   *Experience of plaintiffs' counsel*

Fourth, the Court reviews the experience of counsel who represented the plaintiffs. Attorney Christian L. Connell serves as lead counsel in the instant matter. Attorney Connell began his solo practice in 2000. ECF No. 141-1 at 7 2 (Declaration of Christian L. Connell). He is highly experienced in FLSA matters. With respect to "wage and hour litigation," he has served as plaintiffs' sole counsel in 13 other matters. *Id.* ¶¶ 13–14.

Attorney K. Reed Mayo serves as co-counsel in the instant matter. Attorney Connell retained Attorney Mayo, a solo practitioner, to "assist [] with the litigation," because Attorney Connell is "very familiar" with Attorney Mayo's skill and experience. ECF No. 141-1 ¶¶ 17, 32; ECF No. 141-2 ¶ 2 (Declaration of K. Reed Mayo). Attorney Mayo began his solo practice in 2006. ECF No. 141-2 ¶ 10. He is not experienced in FLSA matters; however, he appears to have relevant knowledge with respect to multi-party claims and employment-related disputes. *Id.* ¶ 11. Upon review of their credentials, the Court finds that plaintiffs' counsel possesses the breadth of relevant experience and knowledge needed to litigate and resolve this matter in the best interests of the plaintiffs. Thus, this factor weighs in favor of approving the proposed settlement.

e.     *The probability of plaintiffs' success*

Fifth, the Court analyzes the probability of the plaintiffs' success on the merits and whether the settlement agreement is inadequate "in light of the strength" of their claims. *Flinn*, 528 F.2d at 1172. When the plaintiffs' success appears uncertain, or minimal, this factor weighs in favor of approving the proposed settlement. *See Lafleur*, 189 F. Supp. 3d at 595. As discussed in Parts III.A.i. and III.A.ii.b., above, the defendants raised significant disputes and complex issues in the instant matter. NRI asserted 13 "defenses and affirmative defenses" against the plaintiffs. ECF No. 103 at 15–16. For example, the defendants argued that many of the plaintiffs' claims were barred in whole or in part by the applicable statute of limitations. *Id*. at 18. In light of these issues, the plaintiffs' success was uncertain. Indeed, the plaintiffs agree that they "could have easily [] achieved less success" if they chose to proceed to trial. ECF No. 138 at 8. As a result, this factor weighs in favor of approving the proposed settlement.

f.     *The amount of the settlement in relation to potential recovery*

Finally, the Court considers the amount of the settlement in relation to the potential recovery. The settlement agreement provides that the plaintiffs will receive $160,000 collectively for their unpaid wages claim. ECF No. 138 at 4; ECF No. 137-1 at 1. The plaintiffs estimate their potential FLSA recovery to be $275,000 for a two-year damages claim, or $355,000 for a three-year damages claim. ECF No. 38 at 4. Based on their calculations, the settlement amount represents 58.1% of the plaintiffs' potential recovery under a two-year damages claim and 45% of their potential

recovery under the three-year damages claim. *Id*. Given the risks associated with proceeding further in this matter, as discussed in Parts III.A.ii.b and III.A.ii.e, above, these amounts "reflect[] a reasonable compromise over the remaining issues actually in dispute." *Lomascolo*, 2009 WL 3094955, at *8. Thus, this factor weighs in favor of approving the proposed settlement.

Because all six factors weigh in favor of approving the settlement agreement, the Court approves the $160,000 settlement fund. Additionally, the Court approves the $9,000 incentive award for Plaintiff Carroll. The Court finds that the incentive award is reasonable because Plaintiff Carroll provided value to the class and his incentive award falls within the range of awards that have been approved in this district. *See In re Peanut Farmers Antitrust Litig.*, No. 2:19-cv-00463, 2021 WL 9494033, at *8 (E.D. Va. Aug. 10, 2021) (awarding nearly $7,000 to each class representative); *see also In re Celebrex (Celecoxib) Antitrust Litig.*, No. 2:14-cv-00361, 2018 WL 2382091, at *1 (E.D. Va. Apr. 18, 2018) (awarding roughly $33,000 to each class representative). Accordingly, the parties' motion to approve settlement (ECF No. 139) will be **GRANTED.**

### B.   Attorneys' Fees[4]

The parties agree that the plaintiffs are entitled to a reasonable award of attorneys' fees and costs under 29 U.S.C. § 216(b), but they dispute the amount of that award. ECF No. 138 at 5; ECF No. 137-2 at 2 (Settlement Agreement). The

---

[4] For purposes of calculating reductions, the Court will use numerical values throughout this Memorandum Opinion and Order.

plaintiffs' attorneys, Christian L. Connell and K. Reed Mayo (collectively, "counsel"), submitted detailed invoices itemizing the time they spent litigating this matter. ECF Nos. 141-1, 141-2. Attorney Connell charged $425 per hour, and Attorney Mayo charged $375 per hour. ECF No. 141 at 6. Counsel represent that they spent 875.65 attorney hours on this matter. ECF No. 141 at 3. They request $367,406.25 for attorneys' fees and $10,993.72 for costs. ECF No. 140.

NRI does not challenge counsel's hourly rate for attorney work or their request for $10,993.72 in costs, but they do object to the total award for attorneys' fees. ECF No. 142 at 5; *see e.g.,* ECF Nos. 142-1, 142-2. NRI urges the Court to reduce counsel's award of attorneys' fees to $145,301.10. *See generally* ECF No. 142.

### i.    *Lodestar amount*

In order to determine the proper fee award, the Court must first determine the lodestar amount. That is the reasonable amount of hours multiplied by a reasonable attorney fee. *Brodziak v. Runyon*, 145 F.3d 194, 196 (4th Cir. 1998). When assessing the reasonableness of the fees, the twelve *Johnson* factors guide the Court's analysis, though it "need not consider all twelve *Johnson* factors, only those relevant to the particular litigation." *Baust v. City of Virginia Beach*, 574 F. Supp. 3d 358, 364 (citations omitted).

### a.    *Reasonable rate*

### 1.    *Attorney rates*

The parties agree that counsel's rates are reasonable. And courts in this district have approved higher rates for experienced counsel in similar matters. *Gholston* 2022 WL 21842305, at *6. (finding an hourly rate of $500 "reasonable . . .

especially" when counsel was "experienced in FLSA" actions) (citing *LaFleur*, 189 F. Supp. 3d at 597–98 (approving reduced hourly rates that ranged from $75 to $475)); *Carr v. Rest Inn, Inc.*, No. 2:14-cv-609, 2015 WL 5177600, at *4 (E.D. Va. Sept. 3, 2015) (finding that $500 per hour was "reasonable" rate for an "experienced . . . FLSA attorney"). Likewise, as discussed in Part III.A.ii.d, above, plaintiffs' lead counsel is well versed in FLSA actions.

Further, the relevant *Johnson* factors—such as the skill and reputation of the attorneys and the contingent basis of the fee—also support the reasonableness of counsel's rates. *In re Abrams & Abrams, P.A.*, 605 F.3d at 246. Upon consideration of these factors and the parties' agreement, the Court finds that counsel's hourly rates of $375 and $425 are reasonable.

### 2. *Paralegal rate*

Attorney Connell represents that he does not have a paralegal, so at times, he performs paralegal tasks. ECF No. 141-1 ¶ 26. When he performed such tasks, he billed at a paralegal rate of $100. *Id.* The Court finds that Attorney Connell's proposed paralegal rate is also reasonable and falls within standard rates in this district. *See Prison Legal News v. Stolle*, 129 F. Supp. 3d 390, 403 (E.D. Va. 2015) (reducing one paralegal's rate from $125 to $100), *aff'd,* 681 F. App'x 182 (4th Cir. 2017); *see also Kennedy v. A Touch of Patience Shared Hous., Inc.*, 779 F. Supp. 2d 516, 527 (E.D. Va. 2011) (approving a paralegal's rate of $100).

### b. *Reasonable hours*

Because counsel's hourly rates are not in dispute, the central question is whether they billed a reasonable amount of time in this case. ECF No. 142 at 5. In

light of the relevant *Johnson* factors, such as the time and labor expended, the difficulty of questions raised, the skill required for the legal service, the attorneys' expectations, the experience of counsel, the length of counsel's relationship with the plaintiffs, and the time limits imposed, the Court finds that counsel did not bill a reasonable amount of time. *In re Abrams & Abrams, P.A.*, 605 F.3d at 246. Thus, some reductions are warranted.

Attorney Connell billed 723.4 hours for attorney work and 28.7 hours for paralegal work. ECF No. 141-1 at 7. Attorney Mayo billed 152.3 hours for his work in this matter. ECF No. 141-2 at 10. According to NRI, counsel's billed time is excessive because many entries are clerical and/or are otherwise unreasonable. *See* ECF No. 141-1.

### 1.   *Clerical entries*

Throughout their invoices, counsel billed their attorney rate for purely clerical work. In light of the skill required to perform these non-legal services, this is unreasonable. *See In re Abrams & Abrams, P.A.*, 605 F.3d at 246. Paralegal work is compensable at an appropriate paralegal rate, *see Two Men & A Truck / Int'l, Inc. v. A Mover Inc.*, 128 F. Supp. 3d 919, 929–31 (E.D. Va. 2015), but "purely clerical . . . tasks" are "not compensa[ble] at all," because such tasks are "ordinarily a part of a law office's overhead," *id*. at 929. Thus, purely clerical tasks "should not be billed at a paralegal rate" *or* an attorney rate. *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 n.10 (1989); *Two Men & A Truck / Int'l, Inc.,* 128 F. Supp. 3d at 929 (citations omitted).

Some examples of purely clerical tasks include: filing, scanning, printing, mailing, and organizing documents; creating files, downloading files; calendaring

events; and making calls regarding logistics. *Two Men & A Truck/Int'l, Inc.,* 128 F. Supp. 3d at 929–30 (collecting cases).

The Court finds that counsel billed for several purely clerical tasks, such as:

10/31/2022:    Re-send Notice to Arthur Henderson, original mailing returned as unable to forward. ECF No. 141-1 at 28.

3/24/2023:    Go to Clerk's Information portion of Virginia State Corporation Commission website and download annual reports of Northampton Restaurants since 2000. *Id*. at 32.

4/4/2023:    Calendar all entries from Rule 16(b) Scheduling Conference. *Id*. at 33.

8/5/2023:    Organizing all documents after conclusion of three days of depositions. *Id*. at 41.

8/24/2023:    Tel. conf. with Karen of Copy Connection. *Id*. at 45.

Because clerical hours are non-compensable, the hours billed for purely clerical work are necessarily unreasonable.

The plaintiffs concede that they billed "roughly 6.2 hours" worth of clerical/paralegal work at an attorney rate, so the fee should be reduced by "$2.500." ECF No. 143 at 4. But there are far more clerical entries than counsel admit.[5] The Court finds that counsel billed roughly 54.5 clerical hours at an attorney rate. Of that

---

[5] Further, counsel's concessions are inconsistent. There are several entries where counsel billed for emailing documents to potential and actual opt-in plaintiffs, but counsel concede that only one of these entries is clerical. For example, counsel concede that an April 27, 2022 entry, "Email Complaint, Answer and Consent form to Jeremiah Ford" is clerical, but they do not concede that a March 21, 2022 entry, "Email Notice of Consent to Join Lawsuit and copy of Amended Complaint to M. Clukey," is also clerical. ECF No. 143-1 at 4. The Court sees no basis to treat these entries differently.

total, Attorney Connell billed roughly 53.6 clerical hours, and Attorney Mayo billed roughly 0.9 clerical hours. Accordingly, the Court will subtract these hours from counsel's time. This leads to a reduction of $23,117.50.

### 2.    *Block billing*

Counsel's invoices include several block billed entries. Block billing occurs when an attorney groups several of the tasks completed that day into a single entry without identifying the time spent on each task. Despite the widespread use of block billing, it is "disfavored in attorney's fees award cases." *Denton v. PennyMac Loan Servs.*, LLC, 252 F. Supp. 3d 504, 531 (E.D. Va. 2017) (citations omitted).

To be clear, there is no "*per se* prohibition" on block billing. *Colonial River Wealth Advisors, LLC v. Cambridge Inv. Rsch., Inc.*, No. 3:22-cv-717, 2024 WL 69071, at *5 (E.D. Va. Jan. 5, 2024) (collecting cases). But courts in this district have recognized that this practice can inhibit the fee award analysis. *Project Vote/Voting for Am., Inc. v. Long*, 887 F. Supp. 2d 704, 717 (E.D. Va. 2012) ("The court's role is not to . . . dissect every individual entry to hypothesize if the different tasks in the same entry could reasonably result in the requested time."); *Guidry v. Clare*, 442 F. Supp. 2d 282, 294 (E.D. Va. 2006) ("Lumping and other types of inadequate documentation are thus a proper basis for reducing a fee award because they prevent an accurate determination of the reasonableness of the time expended in a case."); *Cho v. Joong Ang Daily News Washington, Inc.*, No. 1:18-cv-1062, 2020 WL 1056294, at *6 (E.D. Va. Mar. 4, 2020).

When entries are grouped together it is often difficult to ascertain the reasonableness of any given task. *Guidry*, 442 F. Supp. 2d at 294. If the

17

"documentation of hours is inadequate," a district court may "reduce [an] award accordingly." *Hensley*, 461 U.S. at 433. This is particularly true where entries are block billed. Thus, a "fixed percentage reduction" is appropriate to the extent that these entries are unreasonable or vague. *Jones v. SouthPeak Interactive Corp. of Del.*, No. 3:12-cv-443, 2014 WL 2993443, at *23 (E.D. Va. 2014) (noting that this is the traditional method).

The Court finds that some of the block billed entries either (1) billed attorney, paralegal, and/or clerical work together at an attorney rate, (2) are duplicative, or (3) are vague. For example, in an August 3, 2023 entry, counsel grouped "draft deposition outline" with "copy[ing] documents:"

| 8/3/2023 | Prepare for deposition of Demetri Pramatia; draft deposition outline; review and copy documents to be used as exhibits; review Johnny Pramatia's deposition. | 5 | 425.00 | 2,125.00 |

ECF No. 141-1 at 41. Copying documents is undoubtedly a clerical task that does not require any legal "skill" or "legal services." *In re Abrams & Abrams, P.A.*, 605 F.3d at 244 (citation omitted). Time devoted to such tasks is not compensable and should be discounted. However, the lumped nature of this entry makes it difficult to determine and then discount the time spent on purely clerical tasks.

Because the Court is unable to parse out the time spent for each task on entries such as this, the Court will reduce Attorney Connell's total time by 5%. This figure takes into account the proportion of unreasonable block billed entries against reasonable entries and reflects the Court's view that the majority of the block billed entries appear reasonable, relevant, and compensable. As such, the Court imposes only a modest reduction. *Cf. Route Triple Seven Ltd. P'ship v. Total Hockey, Inc.*, 127

F. Supp. 3d 607, 622 (E.D. Va. 2015) (reducing a fee award by 15% when the "fee petition [was] replete with lumped entries and vague task descriptions"); *Project Vote/Voting for Am., Inc.*, 887 F. Supp. 2d at 716–17 (reducing a fee award by 10% when the "court [could] not find a single" entry that was not blockbilled). Attorney Mayo had considerably fewer block billed entries, only one of which is vague.[6] Others, however, grouped clerical work with attorney work or are duplicative of Attorney Connell's entries. Thus, the Court will reduce Attorney Mayo's time by 2%.

### 3. *Attorney Connell: paralegal hours*

As discussed in Part III.B.i.a.2, above, Attorney Connell performed paralegal tasks at an hourly rate of $100. In total, Connell billed 28.7 hours of purported paralegal work. NRI did not contest these entries. However, every single entry included at least one clerical task. Roughly half of the time billed—13.8 hours—included entries that are only clerical,[7] while the remaining entries block billed paralegal and purely clerical tasks together.[8]

---

[6] An October 20, 2023 entry billed "Telephone conference with Mr. Connell; Continued preparation of Motion in Limine regarding argument that Plaintiffs received more than minimum wage." ECF No. 141-2 at 17. Attorney Mayo does not provide sufficient detail regarding the substance of the "conference with Mr. Connell." Mayo's "continued preparation" appears separate and apart from his "conference" with Attorney Connell.

[7] For example, an October 22, 2022 entry billed "Do mailing for letters E through G," and on July 16, 2023, he billed for "E-file Notice of Filing Consent to Join Lawsuit on behalf of Ashley Hill and Ashley Sementelli." Both entries document purely clerical tasks that were billed at a paralegal rate. ECF No. 141-1 at 28, 39.

[8] For example, a November 11, 2022 entry billed "Revise Notice of Filing Notices of Consent; efile Notice of Filing Notices of Consent for John Dalton and Keith Sacco." This entry grouped paralegal work with clerical work. ECF No. 141-1 at 29. Filing

The latter group—paralegal and purely clerical tasks billed together——raises the same concerns the Court addressed in Part.III.B.i.b.2., above. Of the roughly 34 paralegal entries, 25 fall into this category. These entries are replete with block billing for non-compensable tasks that the Court cannot reasonably parse. Therefore, the Court will reduce Attorney Connell's paralegal time by 10%. This adjusts the total hours from 28.7 to 25.83 hours. The Court will also subtract an additional 13.8 clerical hours from Attorney Connell's paralegal time for the purely clerical entries. These adjustments reduce the total paralegal hours from 28.7 to 12.03. Because this work was billed at a rate of $100, this reduces the award to $1,230.

### 4.   *Attorney conferences*

Counsel spent roughly 41.3 hours conferencing with each other throughout the course of this litigation. There is no prohibition on collecting fees for internal attorney conferences. *See Prison Legal News*, 129 F. Supp. 3d at 401 (noting that some internal conference time "is surely compensable as appropriate strategic discussions"). And counsel's conference entries appear descriptive and clearly relevant to the litigation as a whole. Therefore, the Court concludes that most of the time spent conferencing is reasonable.

---

documents is purely clerical, while the revision of a legal document may be a task for a paralegal or an attorney. The grouped nature of these entries is troublesome, because the Court cannot simply subtract the non-compensable time spent "efil[ing]." *Id*.

However, the Court will reduce time for duplicative entries[9]—that is, where both attorneys billed for the time they spent in meetings with one another. *See Prison Legal News*, 129 F. Supp. 3d at 400; *see also Gries v. Zimmer*, 795 F. Supp. 1379, 1393 (W.D. N.C. 1992) (reducing fees for "duplication of effort and overkill"). There are 11.4 hours of duplicative conference entries. Where this overlap occurs, the Court will only credit one entry. In light of the first, third, seventh, ninth, and eleventh *Johnson* factors, and the fact that Attorney Connell has already discounted some of the time he spent preparing for depositions, the Court will credit Attorney Connell's conference entries. *See* ECF No. 141-1 ¶ 21. As a result, the Court will subtract 11.4 hours from Attorney Mayo's billed time.[10] The Court will also deduct 0.5 hours from Attorney Connell's time because of a vague conference entry.[11] This further reduces counsel's overall award by $5,537.50.

NRI requests the Court eliminate *all* of counsel's conference time because it is not reasonable for the plaintiffs to bill for "routine" meetings "between . . . senior attorneys." ECF No. 142 at 8. In support of this proposition, NRI cites *Int'l Home Fashions, Inc. v. Roberts & Stevens, P.A. (In re Int'l Home Fashions, Inc.)*, No. 1:09-

---

[9] The Court is further troubled by the inconsistent nature of these entries. In multiple instances, such as on August 27, 2023, both attorneys billed for an internal conference with different hours. In that entry, Attorney Mayo billed 2.8 hours for the meeting, while Attorney Connell billed for 2 hours. ECF No. 141-2 at 10; ECF No. 143-3 at 5.

[10] Some of Attorney Mayo's duplicative conference entries were block billed, so the Court cannot readily subtract a clear number of hours. Accordingly, the 2% reduction in Part III.B.i.b.2., above, subsumed these duplicative conferences.

[11] An October 30, 2023 entry billed "Tel. conf. with R. Mayo." ECF No. 141-1 at 52. The Court cannot ascertain whether the conference was related to the instant matter.

cv-206, 2010 WL 3895730, at * 3 (W.D.N.C. Sept. 29, 2010), and *Gries*, 795 F. Supp. at 1391. In *In re Int'l Home Fashions*, counsel's "fee petition [was] *replete* with time entries for conferences and strategy discussions among four attorneys." 2010 WL 3895730, at *3 (emphasis added). In *Gries*, the conference entries were extremely vague and duplicative. 795 F. Supp. at 1391. For example, several entries simply stated "Conference," and four attorneys billed time for the same conferences. *Id*. The *Gries* court determined that billing was unreasonable. *Id*. Aside from a few duplicative entries, none of the other factual circumstances exist here.

NRI also takes issue with the time billed for "Mr. Mayo to learn the case." ECF No. 142 at 8. Out of the total conference time billed, counsel spent roughly 13.3% of that time discussing the factual background of the case. This case was first filed in March 2021. ECF No. 21. Attorney Mayo joined the plaintiffs' team in August 2023. ECF No. 141-1 at 1. Naturally, Attorney Connell had to apprise Attorney Mayo of the factual background, including any developments that occurred in the two years before Attorney Mayo joined the case. The time spent doing so is entirely reasonable. Moreover, most of counsel's conference time was dedicated to discussions about legal strategy, not background facts. Therefore, the Court will not reduce conference hours wholesale.

### 5.  *Motion for conditional certification*

Attorney Connell spent roughly 22 hours on the motion for conditional certification. NRI argues that this time was excessive and should be discounted. The Court finds that all of Attorney Connell's entries related to the motion are clear, descriptive, and relevant to the litigation. In light of the time Attorney Connell

expended in this matter and the length of his relationship with the plaintiffs, the Court finds that the time spent on this motion was largely reasonable.

The plaintiffs filed their motion on September 14, 2021. ECF Nos. 15–16. At that time, only Attorney Connell represented the plaintiffs. FLSA cases, and collective actions in particular, "are fact-intensive, requiring significant commitments of time and personnel to litigate." *Davis v. BT Americas Inc.*, No. 2:16-cv-206, 2017 WL 11506967, at *6 (E.D. Va. May 10, 2017) (citation omitted). Despite his experience, Attorney Connell took on a considerable burden when he prepared the motion and supporting documents without assistance, including from a paralegal. That said, Attorney Connell did bill some clerical work related to the motion at his attorney rate. For example, in a September 14, 2021 entry where Connell "finish[]ed drafting memo in support of motion for conditional certification," he also billed time for "fil[ing] the motion." ECF No. 141-1 at 17. The Court considered these unreasonable entries when it applied a percentage-based reduction for block billed time in Part III.B.i.b.2, above. Accordingly, the 5% reduction subsumed these non-compensable tasks.

### 6.   *Motion for attorneys' fees*

Counsel spent roughly 28 hours on the motion for attorneys' fees. It is likely that Attorney Connell has drafted similar motions in prior FLSA actions. As such, his experience, to some extent, cuts against him here. Undoubtedly, counsel knew that, at some point, they would have to submit necessary documentation in support of their motion. Viewing these facts in a vacuum might lead the Court to conclude that 28 hours was unreasonable. *See Gries*, 795 F. Supp. at 1387 (noting that the 21

hours spent preparing a fee petition, conferencing over the petition, and submitting briefs "was on the high side, but not completely out of reason"). But after reviewing the individual entries regarding work on the motion, the Court finds that these entries are appropriate.

For example, a November 11, 2023 entry from Attorney Mayo reads: "Research regarding separating judgment from Motion for Legal Fees for purposes of appeal; Revising Settlement Agreement; Forwarding same to opposing counsel." ECF No. 141-2 at 21. Such research is relevant to counsel's strategy regarding the motion for attorneys' fees. And in a December 4, 2023 entry Attorney Connell billed time for "Review[ing] Llora v. H.K. Research (4th Cir.) case on attorney's fees; LaFleur v. Dollar Tree Stores, 189 F. Supp. 3d 588 case on attorney's fees." ECF No. 141-1 at 54. While 28 hours is no doubt "on the high side," the Court finds that the hours billed in support of the plaintiffs' motion for attorneys' fees are still reasonable.

NRI suggests that the Court should discount all of the time counsel spent preparing the instant motion for attorneys' fees because it is "clearly excessive" in a case based on a fee-shifting statute. ECF No. 142 at 7. The Court finds this argument unpersuasive. It is "well-settled that reasonable time and expenses spent preparing a fee petition are compensable." *Am. Canoe Ass'n, Inc. v. U.S. E.P.A.*, 138 F. Supp. 2d 722, 746 (E.D. Va. 2001). That counsel seeks to recover fees under a fee-shifting provision, 29 U.S.C. § 216(b), is of little consequence when they still bear the burden of proving the reasonableness of their fees.

NRI maintains that they had already "agreed to pay" counsel a "reasonable fee." ECF No. 142 at 7. True—but that is beside the point. Counsel also had reason

to believe that NRI would vigorously object to any fee they proposed. *See* ECF No. 137-1 ¶ 5. And NRI did. In anticipation of such objections, counsel had to work diligently to prepare a thorough motion. The Court declines to subtract all of the hours counsel spent preparing the motion for attorneys' fees.

### 7.     *Motion for summary judgment*

Counsel spent a considerable amount of time—over 40 hours—on their motion for summary judgment. While this time is significant, the Court finds that the entries associated with the motion are descriptive, relevant to the litigation, and reasonable with respect to the time spent for each individual task.

NRI asserts that the time spent "for [a] motion for summary judgment not filed" was excessive, largely because the plaintiffs did not file a motion for summary judgment. ECF No. 142 at 4, 7 (referencing the "summary judgment [motion] that Plaintiffs never filed" and calling it a "phantom motion"). But NRI later admitted that the plaintiffs did file a motion for summary judgment (ECF No. 110). ECF No. 142 at 7. While the motion addressed "whether 3.5% of the tips were actually used to cover credit card fees," NRI believes that the motion "was not supported by the various affidavits" that counsel prepared and billed time for. *Id.* at 7.

NRI's argument on this point lacks clarity. On the one hand, NRI appears to argue that the Court should subtract *all* the hours counsel spent preparing the motion for summary judgment simply because affidavits were omitted from the motion that was ultimately filed. ECF No. 142 at 4, 7. Alternatively, NRI could be arguing that the plaintiffs prepared two motions for summary judgment but only filed one and billed the time they spent in preparing both the filed and unfiled motions.

25

Under either theory, the Court should then subtract *all* of counsel's summary judgment motion time.

This is a remarkable request. As the parties are acutely aware, attorneys are paid for their time. That includes time spent meeting with clients, interviewing witnesses, researching relevant legal issues, engaging in fact-finding tasks, and preparing relevant affidavits in support of the plaintiffs' legal claims. Here, counsel worked on several affidavits and declarations for opt-in plaintiffs. *See* ECF No. 141-1 at 32–34 (including entries for Soulinthone Keodouangdy, Madelyn Chavez, Bert Tipton, Kyle Grimes, Guy Wolf, Kendall Spaid, Anna Creech, and Arthur Henderson). Ultimately, counsel did not attach these affidavits or declarations to their motion for summary judgment (ECF No. 110).

Counsel did, however, attach a deposition transcript from one of the affiants and a tip reporting log from another. ECF No. 110-5 (Spaid deposition transcript); ECF No. 110-10 (Grimes tip reporting log). It is entirely plausible (and reasonable) that as discovery continued, counsel discovered better evidence—such as the deposition and reporting log—to support their motion. This is precisely the type of work for which counsel could bill a client. *See Project Vote/Voting for Am., Inc.*, 887 F. Supp. 2d at 709 (noting that attorneys should exercise the same "billing judgment" that lawyers use when billing private clients) (quotation marks and citation omitted). In other words, that counsel left some evidence on the cutting room floor, or abandoned the first motion altogether, is trivial.

In light of the foregoing, the Court has no reason to conclude that counsel's efforts were unreasonable or irrelevant to the litigation.[12] The opt-in plaintiffs' own declarations would have aided the parties when it came to settlement negotiations, as they can attest to matters related to their actual employment, such as the time they spent working. The Court declines to discount the time counsel spent working on the affidavits or declarations, and it certainly will not discount time spent on summary judgment entirely. [13]

### c.    *Lodestar summary*

Upon due consideration of the record, the relevant *Johnson* factors, and NRI's objections, the Court finds that the reductions outlined above are warranted. As a result, the lodestar amount is $317,177.

| Attorney Name | Billed Rate | Hours Requested | Hours Awarded | Total Awarded |
|---|---|---|---|---|
| Christian L. Connell[14] | $425 | 723.4 | 622.63 | $264,617.75 |
| Christian L. Connell (paralegal) | $100 | 28.7 | 12.03 | $1,203.00 |
| Reed K. Mayo | $375 | 152.3 | 136.95 | $51,356.25 |
| Lodestar Total | | | | $317,177.00 |

[12] Nor has NRI argued that these declarations and affidavits are wholly irrelevant to the motion or the litigation generally.

[13] Attorney Connell billed roughly 9 hours on the second motion to compel (ECF Nos. 87, 88). Because the second motion to compel sought some of the same documents that the plaintiffs requested in their first motion to compel, the Court finds that this time is excessive. ECF No. 88 at 7 (noting that the "plaintiffs have actually been down this road before" regarding documents the plaintiffs sought in their first and second motion to compel). A reduction is warranted. Thus, the Court will deduct 2 hours from Attorney Connell's time.

[14] Attorney Connell states that NRI has paid him for half of his requested fees associated with the first motion to compel (ECF No. 33). ECF No. 141-1 ¶ 21. Thus, the Court has reduced Attorney Connell's 17.1 hours by 8.5 hours. ECF No. 141-1 at 55–56.

### ii.   *Unsuccessful claims*

Next, the Court will subtract any unsuccessful claims to the extent that they do not relate to the successful ones. *Hensley*, 461 U.S. at 440. The plaintiffs brought four claims against two defendants: (1) an unpaid wages claim pursuant to the FLSA; (2) an unpaid wages claim pursuant to the Virginia Wage Payment Act, Va. Code § 40.1-29; (3) an unpaid wages claim pursuant to the Virginia Wage Payment Act, Va. Code § 40.1-28.8; and (4) a retaliation claim pursuant to the FLSA. *See* ECF No. 10. The plaintiffs voluntarily dismissed all claims, except for their FLSA unpaid wages claim. ECF No. 121.

All the plaintiffs' unpaid wages claims were related and "all recoverable damages overlapped." ECF No. 143 at 4. Because the plaintiffs' Virginia unpaid wages claims were not "distinct," the Court will not subtract any work related to those claims. *Hensley*, 461 U.S. at 440; *see* ECF No. 143 at 4 (conceding that the retaliation claim is the only distinct claim).

Plaintiff Carroll raised a retaliation claim against the defendants. He asserted that he was fired for his commentary on NRI's tip policies. ECF No. 10 at 14–15. This is a "distinct[]" claim that Plaintiff Carroll could have raised in a "separate lawsuit[]." *Hensley*, 461 U.S. at 434–35. Because this claim was voluntarily dismissed, the Court will subtract any hours that were dedicated to it.

Counsel suggests that that they devoted little time to Plaintiff Carroll's retaliation claim. ECF 143 at 5. And the Court has found just one relevant entry from August 31, 2023: "Tel. conf. with R. Mayo re: dismissing retaliation claim." ECF No. 143-3 at 6. However, the plaintiffs asserted this claim in both the initial Complaint

and Amended Complaint. ECF No. 1 ¶ 51–59; ECF No. 10 ¶ 64–72. The plaintiffs must have billed some time with respect to this claim when they prepared both complaints. But due to the vague nature of the complaint-related entries, it is difficult to determine how time was divided for each claim. For this reason, the Court will reduce the overall award by 2%. This reduces the lodestar by $6,343.54.

### iii.    Degree of success

Finally, this Court must consider the plaintiffs' degree of success. This is the "most critical factor" when assessing the "reasonableness of a fee award." *Doe v. Chao*, 435 F.3d 492, 506 (4th Cir. 2006) (quotation marks and citation omitted). There is no "precise formula" for this analysis. *Hensley*, 461 U.S. at 436. At bottom, courts "*must* compare the amount of damages sought to the amount awarded." *Mercer v. Duke Univ.*, 401 F.3d 199, 204 (4th Cir. 2005) (citation omitted and emphasis added). However, attorneys' fees need not be proportionate to the amount of damages sought. *Randolph v. PowerComm Constr., Inc.*, 780 F. App'x 16, 23 (4th Cir. 2019) (unpublished) ("A difference between damages sought and recovered does not *automatically* require reduction.") (citation omitted). Accordingly, the Court will not reduce or apportion the fee award based solely on the difference between the damages the plaintiffs sought and the damages they recovered through this settlement. The Court will consider the "*overall* degree of success in light of the litigation as a whole." *Id.* at 23 (citing *Hensley*, 461 U.S. at 440).

NRI states that this settlement was no "homerun" for the plaintiffs because, as of March 2023, the plaintiffs believed their damages were worth roughly $900,000. ECF No. 142 at 9. In NRI's view, the actual $160,000 settlement represents a small

degree of success, so the Court should reduce the overall attorneys' fee award by 40%. *Id*. at 4, 10. The plaintiffs state that "little, if any" reduction is warranted at this step. ECF No. 143 at 5. The Court finds that the plaintiffs were largely successful in recovering under their central claim. For this reason, only a modest reduction is warranted.

### a.   *Voluntary dismissals*

The plaintiffs brought four claims and dismissed all but one. ECF No. 121. Of the dismissed claims, the plaintiffs were only "unsuccessful" on the retaliation claim. *Hensley*, 461 U.S. at 435. To be clear, that claim was brought only on Plaintiff Carroll's behalf. When the Court views the "litigation as a whole," this claim does not affect the *plaintiffs*' overall relief at all. *Id*. In turn, its dismissal has little to no impact on the plaintiffs' degree of success at step three.

The plaintiffs also dismissed all their claims against Defendant Kostas Pramatia.[15] ECF No. 121. This dismissal certainly reduced the extent of plaintiffs' success.

### b.   *Types of damages recovered*

With respect to damages, the plaintiffs sought unpaid wages as well as "liquidated damages, prejudgment interest, [and] post-judgment interest." ECF No. 10 at 2. Through this settlement, the plaintiffs successfully recovered both unpaid wages and liquidated damages. ECF No. 137-1¶ 3. The March 2023 settlement

---

[15] The Court declines to consider the dismissal of Defendant Pramatia at step two because the claims against him were not distinct or unrelated to the plaintiffs' other claims against NRI.

demand makes clear that the plaintiffs valued recovery for unpaid wages and liquidated damages equally. ECF No. 142-2 at 1 (demanding $450,000 for back-pay and $450,000 for liquidated damages). Recovery for both types of damages demonstrates a high degree of success for the plaintiffs. ECF No. 137-1 ¶ 7.

### c.   *Amount of damages recovered*

Next, the Court considers the actual amount recovered against the amount that the plaintiffs sought. NRI avers that the plaintiffs' prior $900,000 settlement demand demonstrates a lack of success when the plaintiffs only recovered $160,000. ECF No. 142 at 9. The Court considered that settlement demand, but it need not rely solely on those figures, because the Amended Complaint provides an estimate for the maximum amount that the plaintiffs sought. *Cf Denton* 252 F. Supp. 3d at 530 (considering the plaintiffs' settlement demand at step three when the plaintiff did not request a dollar amount in the complaint).

The plaintiffs' Amended Complaint repeatedly references a three-year damages window. For example, the plaintiffs alleged that NRI "failed to pay minimum wages at the correct rate for the last three years." ECF No. 10 ¶ 31. For this reason, the Court will consider the plaintiffs' recent calculations on the three-year damages claim. According to the plaintiffs' more recent calculations, and in the best-case scenario,[16] the plaintiffs could recover roughly $375,052.04 for their unpaid wages and liquidated damages. The $160,000 settlement represents roughly 43% of

---

[16] As noted, this figure is based on a three-year damages claim. It also presumes that the plaintiffs would have prevailed in proving that the defendants acted willfully.

their maximum recovery. While this is by no means a whopping victory for the plaintiffs, it—at most—weighs in favor of a modest reduction. *Cf McNeil v. Faneuil, Inc.*, No. 4:15-cv-81, 2017 WL 9771834, at *11 (E.D. Va. Nov. 8, 2017) (reducing the lodestar amount by 10% when the plaintiffs recovered 16% of what they "believed they were entitled to"), *R. & R. adopted by,* 2018 WL 1411017 (E.D. Va. Mar. 21, 2018)

The plaintiffs' Amended Complaint further demonstrates that their initial expectations were on par with what they were actually awarded in the settlement. *See McNeil*, 2018 WL 1411017, at *4 (approving a Magistrate Judge's analysis when the court relied on the amount the plaintiffs initially sought in their Amended Complaint). In their Amended Complaint, the plaintiffs alleged that "they suffered damages, specifically lost wages in an amount up to $1,500.00 each." ECF No. 10 ¶ 63. Based on this estimate, the plaintiffs' maximum recovery for unpaid wages would have been $165,000, with $82,500 attributable to unpaid wages and liquidated damages, respectively.[17] The plaintiffs' settlement is roughly the same amount: $160,000. ECF No. 137-1 ¶ 7. The settlement also allocates half of that fund for unpaid wages and the other half to liquidated damages. *Id*. There is little difference between the plaintiffs' initial expectations and the amount they recovered. On balance, this represents a high degree of success for the plaintiffs.

---

[17] $1,500 multiplied by 55 class plaintiffs equals $165,000.

### d. *Motion for conditional certification*

The plaintiffs enjoyed partial success on their motion for conditional certification. Initially, the plaintiffs sought to certify a class that consisted of four groups of workers: (1) waiters, (2) bussers, (3) hostesses, and (4) bartenders. ECF Nos. 15–16. On September 26, 2022, Judge Allen granted and denied that request in part, rejecting the plaintiffs' theory that all four groups were similarly situated, because bussers and hostesses were not tipped workers. ECF. No. 55 at 9–10. Consequently, the partial denial of the plaintiffs' motion for conditional certification demonstrates partial success.

In light of all of the circumstances discussed above, the Court concludes that a 5% reduction in attorneys' fees is appropriate. This reduction strikes the appropriate balance between the various issues the Court has confronted and results in an additional cut of $15,858.85 from the lodestar.

### iv. **Award Summary**

While the Court's calculations are based on approximations, this methodology satisfies the Supreme Court's acknowledgement that, in fee-shifting cases, the "goal . . . is to do rough justice, not achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011). The Court's revised calculation of attorneys' fees is based upon the relevant *Johnson* factors, the reasonable amount of hours expended, a reduction for unsuccessful claims, and a reduction for the degree of success that the plaintiffs enjoyed.

Accordingly, the total attorneys' fees award is reduced from $367,406.25 to $294,974.61.

| Description | Amount | Total |
|---|---|---|
| Lodestar | | $317,177.00 |
| Reduction for unsuccessful claims | 2% | - $6,343.54 |
| Reduction for degree of success | 5% | - $15,858.85 |
| Total Fee Award[18] | | $294,974.61 |

### C.    Costs

Counsel also requests $10,993.72 for costs. ECF Nos. 140, 141-1 at 59. NRI does not oppose this request. Counsel provides a list of costs, largely related to discovery, such as service of subpoenas. ECF No. 141-1 at 59. Having found that counsel's uncontested request is reasonable and complies with this district's Local Rules, the Court will award $10,993.72 in costs.

### IV.    CONCLUSION

For the reasons stated herein, the Joint Motion to Approve FLSA Settlement (ECF No. 137) is **GRANTED.** Plaintiff Nathan Carroll's incentive award of $9,000 and the settlement fund in the gross amount of $160,000 are **APPROVED.**

The plaintiffs' Motion for Attorneys' Fees (ECF No. 141) is **GRANTED WITH MODIFICATIONS.** Counsel shall be **AWARDED** $294,974.61 in attorneys' fees and $10,993.72 in costs, to be paid by Defendant Northampton Restaurants, Inc.

---

[18] This award is significantly more than the plaintiffs' recovery. However, this is "not an uncommon result" in FLSA cases, where attorneys' fees can "substantially exceed damages." *Cho*, 2020 WL 1056294, at *10 (quotation marks and citation omitted).

The Clerk is **DIRECTED** to send a copy of this Memorandum Opinion and Order to all counsel of record.

The case is hereby **CLOSED**, except the Court **RETAINS** jurisdiction to enforce the settlement agreement.

**IT IS SO ORDERED.**

                                                        /s/

_____

Jamar K. Walker
United States District Judge

Norfolk, Virginia
March 21, 2024